IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| TAILORED HERB CO., LLC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 6:23-cv-03144-MDH |
| | ) |
| WISE HEALTH SOLUTIONS, LLC, | ) |
| VERACIOUS INVESTIGATIVE | ) |
| COMPLIANCE COLUTIONS | ) |
| INTERNATIONAL, LLC, and | ) |
| OAKSTERDAM UNIVERSITY, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court are Defendants Wise Health Solutions and Veracious Investigative Compliance Colutions International's Motions to Dismiss.[1] Defendants move to dismiss Plaintiff's claims because it has failed to exhaust its administrative remedies; Plaintiff lacks standing to bring any claims; and/or Defendants owed no independent duty to Plaintiff. Plaintiff initially filed its case in Howell County, Missouri. Defendant Wise filed a motion to dismiss in state court. Defendant Veracious removed the case and filed a motion to dismiss. (Doc. 5).[2] On October 24, 2023, the Court held a hearing on the motions to dismiss. The Court Ordered the parties to file a status report regarding any administrative appeals, court decisions, or other adjudications of any issues that are relevant or material, or are arguably relevant or material, to the Court's determination of the pending motions. The parties have filed a joint status report stating in this case Plaintiff currently has three pending appeal actions before the Missouri Administrative

---

[1] Defendant Oaksterdam University has previously been dismissed.
[2] Defendant Veracious's Motion to Dismiss joins in the original motion filed in state court. (See Doc. 5).

1

Hearing Commission, consolidated under Case Number 20-0657, with a hearing currently scheduled for May 6-7, 2024. In addition, the status report states no court decisions or other adjudications of any issues that are relevant or material, or are arguably material, to the Court's ruling on the pending motions to dismiss. The motions are fully briefed and ripe for review.

## BACKGROUND

Plaintiff's claims stem from the submission of applications to the State of Missouri for a medical marijuana commercial cultivation facility license, a medical marijuana commercial dispensary facility license, and a medical marijuana commercial infused products manufacturing facility license. The State denied Plaintiff's applications and Plaintiff did not receive licenses. Plaintiff's allegations against the Defendants are based on Defendants' "role" in evaluating Plaintiff's applications, specifically the scoring of the applications that were submitted to the State.

It is undisputed that Defendants did not make the decision regarding whether Plaintiff was granted a license. The Missouri Department of Health and Senior Services ("DHSS"), who is not a named party to this lawsuit, is the entity who ultimately approved or denied the applications, including the decision to deny Plaintiff's applications. DHSS was also responsible for drafting the license application questions and creating the instructions for the scoring and evaluation of the applications. The scoring methodology was set forth in the Missouri Code of State Regulations and subjected the applications to a two-tiered scoring system. Defendants did not create the scoring methodology or the scoring system.[3]

---

[3] Article XIV of the Missouri Constitution1 and the Missouri Code of State Regulations and established the criteria and procedures by which all medical marijuana commercial facilities licensing applications are to be processed and evaluated, including the requirements for numerical scoring, and contain a basic framework of the required qualifications for commercial facility licensure, including a specific overview of the criteria on which an applicant was to be judged.

Under this scoring system, initially the names and/or other identifying information of the applicants were removed from the applications and then scored, with the applications being identified solely by an applicant's selected or generated alphanumeric "code" or "ID." After scoring, the names and/or other identifying information of the applicants were added back to the applications by DHSS and the applications were then ranked by score from highest to lowest.

The State of Missouri Office of Administration ("OA") determined it would select and employ an outside entity to assist DHSS in scoring the applications. In order to find that entity the OA issued a Request for Proposal for Medical Marijuana Facility Application Scoring Services ("RFP"). The first RFP received no responses. The OA then issued a second RFP. The second RFP contained language forbidding any conflict of interests or apparent conflict of interest in relation to the services provided by the scoring entity. Plaintiff's claims are based in part on the language contained in the RFP that forbid conflicts of interest or apparent conflicts of interest.

Defendant Wise Health Solutions submitted a response to the second RFP, along with six other entities, seeking to obtain the scoring contract with the state. The OA ultimately selected Wise after it obtained the highest score of the proposals.[4] The State of Missouri awarded Wise a vendor contract to score all medical marijuana commercial facilities applications for the state. WHS bid a total cost of $2,537,795.00 for its application scoring duties, to be paid by the State of Missouri, with an estimated cost during the "first period" of the contract (one year) of $525,919.00. Wise was the highest scoring applicant for the contract.

The General Requirements portion of the vendor contract between WHS and the State of Missouri, Section 2.1.3, requires:

---

[4] Plaintiff's Complaint contains detailed allegations (or argument) regarding the selection process, the other bids, the due diligence of the OA, etc. that the Court finds irrelevant to the analysis of the issues presented in the pending motions. Neither the OA, nor DHSS, are parties to this lawsuit.

3

in accordance with Section 2.8, Conflict of Interest...the contractor and contractor's personnel, including all subcontractor personnel on the project, shall submit to the state agency a signed copy of Attachment 2, Confidentiality and Conflict of Interest, Missouri Medical Marijuana Contract Services.

In the Scope of Work portion of the contract, Conflict of Interest Section 2.8.1, the agreement states:

> During the term of the contract, the contractor shall not have a conflict of interest or apparent conflict of interest…Such conflicts may include, but are not limited to, any of the following actions by the contractor or its officers, contractor's personnel, consultants, subcontractors, suppliers or agents: (d) The contractor, its personnel, or any person within two degrees of contractor kinship…shall not have any financial interest in the business of a third party that causes, or would appear to cause, a conflict of interest in connection with the contractor's performance under the contract.

Wise affirmed it had no conflict of interest.

Plaintiff also states that the terms of the contract between Wise and the State required Wise to affirm that all application reviewers would have appropriate experience for the project, be college-degreed, or demonstrate expert practitioner, peer-reviewed status. Plaintiff claims despite agreeing that the reviewers would be well versed in the subject area from previous experience evaluating applications from other states and industry experience that Wise failed to provide "qualified" evaluators to score the applications.[5]

On or about September 30, 209, Plaintiff submitted an application for a medical marijuana commercial cultivation license. On or about November 6, 2019, Plaintiff submitted an application for a medical marijuana commercial dispensary facility license. On or about November 13, 2019, Plaintiff submitted to DHSS Plaintiff's application for a medical marijuana commercial infused products manufacturing facility license. Plaintiff paid application filing fees totaling $22,000.00 -

---

[5] Plaintiff alleges multiple appeals filed by other entities that were denied licenses have found that Wise did not consistently score the applications.

$10,000.00 for the cultivation facility application and $6,000.00 each for the dispensary application and infused products manufacturing facilities applications.

Sometime prior to December 26, 2019, WHS scored Plaintiff's application for a medical marijuana commercial cultivation facility. The score was 1,275.48 points and the minimum score awarded licensure was 1479.41 points, a difference of 203.93 points. Sometime prior to January 10, 2020, WHS scored Plaintiff's application for a medical marijuana commercial infused products manufacturing facility. The score of this application was 1,448.87 points and the minimum score needed for licensure was 1526.16 points, a difference of 77.29 points. Sometime prior to January 23, 2020, WHS scored Plaintiff's application for a medical marijuana commercial dispensary facility. The score of this application as determined by WHS was 1345.83 points and the minimum score needed for licensure of a dispensary in Plaintiff's Congressional District 8 was 1468.27 points, a difference of 122.44 points.

On or about, December 26, 2019, Plaintiff received notice from DHSS that Plaintiff's application for a medical marijuana commercial cultivation facility license had been denied. On or about, January 10, 2020, Plaintiff received notice from DHSS that Plaintiff's application for a medical marijuana commercial infused products manufacturing facility license had been denied. On or about, January 23, 2020, Plaintiff received notice from DHSS that Plaintiff's application for a medical marijuana commercial dispensary facility license had been denied. Plaintiff has appealed DHSS' denial of each of its three medical marijuana commercial facility applications, and those administrative appeals are pending before the Missouri Administrative Hearing Commission.

Plaintiff brings its claims against Defendants alleging the following Counts – I) Tortious Interference with a Business Expectancy; II) Civil Conspiracy; III) Conflict of Interest; and IV) Negligence, Misfeasance, and Malfeasance. Plaintiff contends that the Defendants failed to abide

by the rules established by DHSS and the Missouri statutes and regulations authorizing medical marijuana sales and issuing licenses. Plaintiff's allegations include, but are not limited to, alleged conflicts of interest in the scoring, failure to uniformly score according to the guidelines, instructions and contract terms, failure to train the individuals conducting the scoring, and unqualified employees conducting the scoring.

Plaintiff argues conflicts existed between some of the scorers working for Defendants because they also worked for companies seeking applications. Plaintiff alleges Wise submitted an affidavit that there would be no conflicts but then violated the terms of the agreement. Plaintiff also argues that despite the State being the ultimate decision maker it did not independently conduct a review and relied on "faulty" scores. Defendants move to dismiss all the claims and for the reasons set forth herein, the Court grants the motions to dismiss.

## STANDARD

"To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content...allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Distrib. Co., Inc*., 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678. To that end, the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp*., 280 F.3d 868, 870 (8th Cir. 2002).

To survive a 12(b)(6) motion to dismiss, a complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). It must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint . . . does not need detailed factual allegations," a plaintiff must provide the grounds of his entitlement with more than mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Plaintiff's claims stem from a denial by DHSS of its applications for medical marijuana licenses. Plaintiff does not dispute that Defendants did not have authority to determine whether DHSS ultimately granted a license to Plaintiff. Defendants' role was simply to score the applications pursuant to the scoring methodology set forth in the Missouri Code of State Regulations and the State's two-tiered scoring system. Plaintiff further acknowledges the application score was only one factor DHSS considered when determining whether to grant a medical marijuana license. For the reasons set forth herein, the Court finds Plaintiff has failed to state a claim against Defendants.

**Tortious Interference with a Business Expectancy**

A claim for tortious interference with a contract or business expectancy requires five elements: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. *Community Title v. Roosevelt Fed. Sav. & Loan*, 796 S.W.2d 369, 372 (Mo. banc 1990).

Plaintiff alleges that by filing the applications with DHSS, and paying the application fees, Plaintiff created a valid business expectancy that its applications would be fairly scored by Wise, that the scoring would be performed according to the State's requirements, and according to the terms of the contract between Wise and the State. Plaintiff further alleges Wise breached its contract with the State that resulted in tortious interference with Plaintiff's business expectancy.

Defendants move to dismiss this claim arguing Plaintiff fails to allege facts, even taken in a light most favorable to Plaintiff, to satisfy a claim for tortious interference. First, Defendants contend that submitting an application for a license does not create a contract or business expectancy. Plaintiff's submission, and payment of a fee, did not create a business relationship with the State.

Plaintiff argues it expended money on the preparation, and the filing, of the applications and as a result this expenditure creates a basis for the claim against Wise. However, this does not create a business expectancy or a contract between Plaintiff and the State, nor Plaintiff and Wise. Further, DHSS made the decision to deny Plaintiff a license. While the scores given to the applications were a factor, it is undisputed that the scores and evaluations submitted to DHSS were not binding on DHSS or its decision on whether to grant a license to an applicant.

Plaintiff then argues its business expectancy was that its applications would be fairly and thoroughly scored, without any conflicts, in accordance with the guidelines. The parties have not presented the Court with any cases where a court has found that a plaintiff has a business expectancy when it has filed an application for a governmental license. Although not binding, this Court has reviewed the decision by the United States District Court Eastern District of Arkansas that found the governmental licensing process does not create a business expectancy as a matter of law. *Absolute Essence, LLC v. Pub. Consulting Grp. LLC*, No. 4:22CV294 JM, 2023 WL

2603996 (E.D. Ark. Mar. 22, 2023).[6] The Arkansas district court cited to cases from other jurisdictions that have reached similar conclusions. *Id.* at *3, citing *State ex rel. CannAscend Ohio LLC v. Williams*, 2020 WL 554226, *17 (Ohio App. 2020); *Bakri v. Daytona Beach*, No. 6:08-CV-1572-ORL-28GJK (M.D. Fla. June 5, 2009); *Asia Invest. Co. v. Borowski*, 133 Cal. App. 3d 832, 840-41 (1982); *Itasca v. Lisle*, 817 N.E.2d 160, 352 Ill. App. 3d 847, 858 (2004); *Wagner v. Nottingham Assocs.*, 464 So. 2d 166, 169, fn. 4, 5 (Fla. App. 1985); *Blank v. Kirwan*, 703 P.2d 58, 39 Cal. 3d 311, 316-17 (1985).

In addition, Plaintiff's arguments that it had an expectation to have its applications scored "fairly" does not create a business expectancy. Further, Plaintiff's business expectancy (to conduct medical marijuana business) was subject to the contingency that the State grant Plaintiff a license. Again, Defendants had no authority to grant, or deny, Plaintiff's license. The parties have not submitted any binding authority on whether the governmental licensing process creates a business expectancy and for the reasons set forth herein, the Court finds it does not.

**Negligence, Misfeasance, and Malfeasance**

Count IV of Plaintiff's First Amended Petition brings claims for Negligence, Misfeasance, and Malfeasance. Plaintiff alleges that Defendants were negligent in their scoring of the applications and that the negligent scoring caused Plaintiff's applications to be scored improperly. Plaintiff alleges as a result Plaintiff received an insufficient ranking for licensure. Plaintiff claims Defendants are responsible for economic damages to Plaintiff based on the "negligent" scoring.

In Missouri, to prevail on a claim for negligence Plaintiff must establish: 1) a duty owed by the defendant to the plaintiff; 2) a breach of that duty by the defendant; 3) causation; and 4) an injury or actual damages. *Payne v. Fiesta Corp.*, 543 S.W.3d 109, 118 (Mo. Ct. App. 2018). "[T]o

---

[6] This decision is currently pending on appeal in the Eighth Circuit. Case No. 23-1642.

9

Case 6:23-cv-03144-MDH   Document 50   Filed 03/26/24   Page 9 of 15

prove a causal connection to establish negligence, the plaintiff must show both causation in fact and proximate causation." *Housel v. HD Dev. of Maryland, Inc.*, 196 F.Supp.3d 1039, 1051 (W.D. Mo. 2016) (citing *Robinson v. Mo. State Hwy. & Transp. Comm'n*, 24 S.W.3d 67, 77 (Mo. App. W.D. 2000)).

Here, Plaintiff does not dispute that Defendants could not grant or deny an application. Plaintiff further does not dispute that the State was not bound by the scores or evaluations submitted by Wise. A review of Plaintiff's allegations, even taken in a light most favorable to them, does not establish that Defendants owed a duty to Plaintiff. Defendants contracted with the State to evaluate and score the applications. The scoring was to be done pursuant the State's requirements. Defendants' evaluations and scores presented to the State pursuant to that contract did not create a duty to Plaintiff. The Court further discusses this in the standing section below.

Further, even if Plaintiff could establish a duty, Defendants' conduct is not the causation of Plaintiff's alleged damages. Plaintiff has conceded that the State was the only entity that could grant a license and that the State was not bound by the evaluations and scores submitted by Wise. If Plaintiff believes the scores were insufficient or inadequate based on the State's two-tiered scoring system the recourse is, and was, to appeal that score through the State's administrative process. The Court finds Plaintiff has failed to state a claim against Defendants.

**Standing**

In addition to the reasons discussed above, Plaintiff claims also fail for lack of standing. "Under Missouri law, '[b]efore an act is said to be negligent, there must exist a duty to the individual complaining." *Nelson v. Freeman*, 537 F. Supp. 602, 607 (W.D. Mo. Apr. 7, 1982), *aff'd*, 706 F.2d 276 (8th Cir. 1983) (citations omitted). The Public Duty Rule, adopted by Missouri courts, "clearly recognize and apply an established state court rule of decision, that a statute which

creates a duty to the public, and to individuals only as member of the public, will not support a private cause of action in favor of individuals." See *Nelson*, 537 F.Supp. at 609. These cases apply to public employees.

Here, Defendants were hired to perform certain services for DHSS. DHSS contracted with Defendants to fulfill its constitutional mandate as set forth in Article XIV. The defined purpose of Article XIV was "to permit state-licensed physicians and nurse practitioners to recommend marijuana for medical purposes to patients with serious illnesses and medical conditions…..and to allow for the limited legal production, distribution, sale and purchase of marijuana for medical use." Art. XIV, §1.

Defendants cite to *Nelson* as analogous to this case. In *Nelson*, the district court found that the Missouri Child Abuse Statute was found to have created "only a public duty and not a duty to individuals" and followed the Missouri Supreme Court's precedent in *Parker v. Sherman*, 456 S.W.2d 577 (Mo. 1970). *Id.* The Court further found that even when it is an alleged willful refusal to perform the duties mandated by the statute, that there is still no cause of action under Missouri Law. *Id*. at 612. However, *Nelson* involved public employees.

Here, Defendants argue its duties, if any, are owed to the public at large. Defendants were contracted by DHSS and contend under the public duty rule they are not liable to Plaintiff for the denial of its applications. This reasoning also applies to Plaintiff's conflict of interest allegations. However, as stated throughout this Order, Plaintiff's claims are appropriate claims to be raised with the State in an appeal for the denial of the applications. Plaintiff's conflict of interest claim alleges each score assigned to the application questions was a result of a score that was obtained with a conflict of interest. The Court finds the application of the public duty doctrine, or the analysis of this theory, is unnecessary.

The Court does not disagree that Plaintiff's allegations, when taken as true, paint a picture of an application process that contains flaws. However, Plaintiff's allegations stem from the State of Missouri's actions with regard to legislation, rule-making, decision-making (in both hiring Defendants to score the applications and in their reliance on Defendants' scores), and review of the applications. The State of Missouri, however, is not a defendant. Wherefore, for the reasons set forth herein the Court finds Plaintiff's claims should be dismissed.

**Civil Conspiracy**

The elements of civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts, and (5) resulting damages. *Mackey v. Mackey*, 914 S.W.2d 48, 50 (Mo. App. W.D. 1996). The essence of a civil conspiracy is an unlawful act agreed upon by two or more persons. *Id.*

Here, for the reasons set forth herein, the Court finds Plaintiff's other claims fail to state a claim. As a result, Plaintiff's civil conspiracy claim must also fail. There is no underlying tort for which Plaintiff can state a claim to survive a motion to dismiss.

**Defendant Veracious**

In addition, Defendant Veracious argues Plaintiff's Petition makes no direct allegations against it and that there is no allegation that Veracious did business within the state of Missouri. Veracious states Plaintiff fails to allege it had any contracts or connection to DHSS or the Plaintiff.

As set forth in the briefing, the First Amended Petition references Veracious five times in the seventy-four page pleading. Veracious is first named in the caption and then identified in paragraph 3 as "Defendant Veracious Investigative & Compliance Solutions International LLC (hereinafter "Veracious") is a Texas corporation whose principal place of business is in Carson

12

City, NV, and whose registered agent's office is located in Houston, TX." Plaintiff also references Veracious in the prayer for relief.

The only specific allegation regarding Veracious is in paragraph 19 that alleges:

On information and belief, at some point in June of 2019, Defendant Wise Health Solutions, LLC was created when Defendants Veracious Investigative and & Compliance Solutions International, LLC, and Oaksterdam University entered into an arrangement whereby those two entities joined together in their efforts to secure a vendor contract from the State of Missouri to score the applications for Missouri medical marijuana commercial facility licenses.

In response, Plaintiff argues that Veracious should somehow be held liable for the acts of Wise. However, Plaintiff does not allege any basis for this liability. Further, for the reasons set forth herein the Court has found that Plaintiff has failed to state a claim against Wise. After a review of the record before it, the Court finds Plaintiff has failed to state a claim against Veracious and any such claims should also be dismissed.

**Failure to Exhaust**

Finally, Defendants move to dismiss Plaintiff's claims arguing it has not exhausted its administrative remedies. "The doctrine of exhaustion of administrative remedies is a jurisdictional requirement." *McDonald v. City of Brentwood*, 66 S.W.3d 46, 49 (Mo. App. W.D. 1998). "As a general rule, courts will refrain from acting until the litigants have exhausted all available administrative remedies provided by the statute." *Council House Redevelopment Corp. v. Hill*, 920 S.W.2d 890, 892 (Mo. banc 1996). According to Missouri law, the Missouri Administrative Hearing Commission (AHC) is the appropriate body for initial redress of issues concerning medical marijuana licenses being denied by the DHSS. Art. XIV, § 1.3(23) and R.S.Mo. § 621.120.

In this case, Plaintiff currently has three pending appeal actions before the Missouri Administrative Hearing Commission, consolidated under Case Number 20-0657, with a hearing currently scheduled for May 6-7, 2024. However, the Court finds the exhaustion argument is not

13

dispositive for purposes of the Court's rulings. The Court agrees that Plaintiff's recourse for its alleged claim to have not received a license, whether it was through inaccurate scoring, the State's hiring of Wise, or other allegations of a "flawed" process are claims to be raised against the State and/or through the administrative process.

Here, Plaintiff's claims are separate and distinct from the administrative claims and raise tortious actions against a third party in that process. As discussed herein, Plaintiff's claims are predicated on allegations that Defendants' misconduct in scoring the applications caused them harm. Plaintiff argues it is not appealing the license denial and concede Defendants did not have authority to grant a license. Rather, Plaintiff claims Defendants have caused them economic damages through the evaluations of the applications. However, Plaintiff has also conceded that the State was not bound by the scores it received from Defendants and there is no allegation that the scores alone were the only basis for the granting of, or the denial of, the license.

For the reasons set forth herein, the Court finds Plaintiff has failed to state a claim against Defendants. As a result, the Court does not address the administrative exhaustion issues. However, the Court agrees that Plaintiff's claims based on the arguments it has raised, including the "flawed" scoring system created and implemented by the State, the entity the State contracted with to assist in scoring the applications, and the overall allegations of "conflicts" in the system are proper issues to be raised in any appeal of the denial of Plaintiff's applications and not against these Defendants.

## CONCLUSION

Wherefore, for the reasons stated herein, the Court hereby **GRANTS** Defendants' Motions to Dismiss. Plaintiff's claims are hereby dismissed in their entirety.

**IT IS SO ORDERED.**

DATED: March 26, 2024

                                                         */s/ Douglas Harpool*
                                                       **DOUGLAS HARPOOL**
                                                       **UNITED STATES DISTRICT JUDGE**